Frank CARTELLI, Jr., Plaintiff,

v.

The EGYPTIAN NAVIGATION COMPANY, INC., Defendant.

No. 83 Civ. 5492 (RLC).

United States District Court, S.D. New York.

Nov. 19, 1986.

Zimmerman & Zimmerman, New York City, for plaintiff; Gordon Zimmerman, of counsel.

Alexander, Ash, Schwartz & Cohen P.C., New York City, for defendant; Sheldon Bunin, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

After a jury trial, the jury found that both plaintiff and defendant were negligent and that the negligence of each was a proximate cause of and contributed equally to bringing about plaintiff's injuries. The jury found that $32,000 would adequately compensate the plaintiff for his injuries and awarded him the net amount of $16,-000.

Defendant moved for directed verdict both at the close of plaintiff's case and at the close of the whole case. Decision each time was deferred. Defendant now moves for judgment n.o.v.

On motion for judgment n.o.v., the question to be determined is "whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970). The evidence and all inferences must be viewed in a light most favorable to the non-moving party, *Samuels v. Health & Hospitals Corp.*, 591 F.2d 195, 198 (2d Cir.1979), and the motion "will be granted only if (1) there is a complete absence of probative evidence to support a verdict for the non-movant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair minded men in the exercise of impar-

tial judgment could not arrive at a verdict against him." *Armstrong v. Commerce Tankers Corp.*, 423 F.2d 957, 959 (2d Cir.), *cert. denied*, 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970) (citations omitted); *Noonan v. Midland Capital Corp.*, 453 F.2d 459, 461 (2d Cir.), *cert. denied*, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 333 (1972). That yardstick has been most recently reaffirmed in *Lopez v. McLean Trucking Co.*, 798 F.2d 611, 614 (2d Cir.1986).

■ Since the 1972 amendment to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950 (1976), the rule in this circuit as to a shipowner's liability to longshoremen is that the ship "is not liable for injuries resulting from known or obvious dangers unless the shipowner should anticipate the harm despite the obviousness of the danger." *Evans v. Transportacion Maritime Mexicana*, 639 F.2d 848, 855 (2d Cir.1981); *see also Kakavas v. Flota Oceanica Brasileira, S.A.*, 789 F.2d 112, 119 (2d Cir.1986). Before liability can attach the shipowner must have actual or constructive notice of the danger. The shipowner, however, must take reasonable remedial steps to protect against hidden or non-obvious defects where the shipowner knows or should know of the condition and should realize that it poses a risk. The shipowner, however, has no affirmative duty to supervise the work of the stevedore. *Evans v. Transportation Maritime Mexicana, supra*, 639 F.2d at 855–56.

■ If "the shipowner knows of the dangerous condition and should anticipate that, even if the condition is obvious, the stevedore will not or cannot correct it and the longshoremen will not or cannot avoid it … the shipowner has a duty to take reasonable steps to eliminate or correct the condition." *Lieggi v. Maritime Co. of the Philippines*, 667 F.2d 324, 328 (2d Cir.1981) (quoting *Evans v. Transportacion Maritime Mexicana, supra*, 639 F.2d at 855–56). The shipowner is not relieved of liability simply because it relied on the stevedore to correct the defect, *id.* at 328; *Evans v. Transportacion Maritime Mexicana, su-*

*pra,* 639 F.2d at 856–57, or because it relied on the stevedore's judgment to proceed with the work in spite of the defective condition. *Lieggi v. Maritime Co. of the Philippines, supra,* 667 F.2d at 328; *Lopez v. A/S D/S Svendborg,* 581 F.2d 319, 324 (2d Cir.1978). "The *sin qua non* of a ship's liability for an obviously dangerous condition arising during the process of loading and unloading is reasonable anticipation that the longshoremen will not be able to avoid it." *Giglio v. Farrell Lines Inc.,* 613 F.2d 429, 432–33 (2d Cir.1980) (citations omitted). During the loading and unloading of cargo, the stevedore bears primary responsibility to correct a dangerous condition, and the shipowner ordinarily is entitled to rely on the stevedore to do so. *Evans v. Transportacion Maritime Mexicana, supra,* 639 F.2d at 860.

■ While these various statements concerning a ship's liability to a longshoreman are not altogether consistent, my understanding is that the basic thrust of doctrine in this area is that the ship must be on notice before liability will attach. Where there is a danger clearly apparent to the stevedore and the ship, liability is determined by whether there is a reasonable anticipation that the longshoremen will not be able to avoid the obvious risks posed.

Here the jury readily could have found that during the course of off loading drums containing tallow from the ship on March 2, 1982, spillage occurred leaving grease spots on the deck where the longshoremen were working. Plaintiff saw some such spots of tallow on the deck surface near the hatch from which the drums of tallow were being removed. During his lunch break, plaintiff informed a member of the ship's crew about the tallow spills. The crew member answered him in English sufficient to make plaintiff feel the crew member understood what he had been told. Plaintiff did not report the spillage to the stevedore.

Sometime later plaintiff was required to go on the deck of the ship again, and when he started to leave he stepped on a greasy spot and fell, injuring himself. The place he fell was not where he had earlier seen

the tallow spills which he had reported to the ship. The plaintiff did not know whether the spots of tallow that he had observed earlier had been cleaned. The jury reasonably could have found that the shipowner knew that tallow was being spilled on the deck during the off loading of the drums. The jury also could have found that the stevedore was aware of the spillage of the tallow while the drums were being off loaded. Apparently, tallow spills are incident to off loading of drums of tallow. Therefore, while such spills posed an obvious danger, it was not one that the ship should have reasonably anticipated that the longshoremen would not be able to avoid.

■ The shipowner must keep the ship in such condition that the stevedore and its employees can operate in reasonable safety, but the shipowner has no duty to supervise or inspect the stevedore's operations in order to discover dangerous conditions that develop during the cargo operations. *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 168, 101 S.Ct. 1614, 1622, 68 L.Ed.2d 1 (1981) (owner is under no duty to inspect and supervise unloading operations); *Evans v. Transportacion Maritime Mexicana, supra,* 639 F.2d at 856 ("The stevedore is specifically hired for its expertise in coping with the dangers inherent in loading and unloading cargo").

This is not *Moore v. M.P. Howlett, Inc.,* 704 F.2d 39 (2d Cir.1983), where a longshoreman walked on a deck covered with three days' accretions of ice, water and grease. Nor is this akin to *Tragni v. Establissement Maritime Camille,* 705 F.2d 92 (2d Cir.1983), where the shipowner failed to provide adequate illumination in the ship's hold during cargo operations. Nor is this a case where the deck was left filled with garbage by the ship's crew and longshoremen were injured. *Doca v. Marina Mercante Nicaraguense, S.A.,* 634 F.2d 30 (2d Cir.1980), *cert. denied,* 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 351 (1981).

Cleaning up the tallow does not appear to have been so difficult that the ship could not rely on the stevedore to do the job itself. Nor is there evidence that the shipowner affirmatively joined in the steve-

dore's decision to continue to unload despite the spillage. *Evans v. Transportacion Maritime Mexicana, supra,* 639 F.2d at 856.

 Unless the shipowner is to be held to the old standard of a non-delegable duty, it is difficult for me to see how, as a matter of law, it can be held liable for plaintiff's injury. The evidence showed that tallow spills are a standard occurrence when drums of tallow are off loaded. The shipowner could not be expected to have his crew follow the longshoremen throughout the off loading operation to wipe up the spills as they occurred. The shipowner has every right to rely on and expect the stevedore to take necessary precautions to keep the deck wiped clean of tallow spills until the off loading of the drums has been completed. Any other conclusion, in my judgment, would mean that the shipowner has to oversee the stevedore's function.

Under the circumstances there is no basis for holding the shipowner liable for plaintiff's injury. Judgment n.o.v. is awarded defendant.

IT IS SO ORDERED.